# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JOSEPH RAYMOND HANAS,

        Plaintiff,

v.                                         Case No.  06-10290

INNER CITY CHRISTIAN OUTREACH, INC., a        District Judge Arthur J. Tarnow
Michigan non-profit corporation, DWIGHT
R. ROTTIERS, STANETTE J. AMY, and              Magistrate Judge Mona K. Majzoub
REGINALD COLEMAN,
            Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART HANAS'S MOTION FOR SUMMARY JUDGMENT [48]; AND DENYING IN PART AND GRANTING IN PART AMY'S MOTION FOR SUMMARY JUDGMENT [18] AND COLEMAN'S CONCURRENCE [24]

I.  Introduction
II.  Facts
    A.  Before Placement at Inner City Christian Outreach
        1.  January 23, 2003 Hearing
        2.  January 24, 2003 Hearing
    B.  After Placement
        1.  February 27, 2003 Hearing
        2.  March 13, 2003 Hearing
III.  Relief Requested and Procedural Framework
IV.  Inner City Christian Outreach and Dwight Rottiers
    A.  State action
    B.  Issue of fact
    C.  Free exercise
    D.  Establishment Clause
    E.  Right to counsel
    F.  Equal protection
    G.  Conspiracy
V.  Stanette Amy
    A.  Pre-Placement
    B.  Post-Placement
        1.  Amy does not receive absolute immunity
        2.  A caseworker in Amy's position could receive absolute immunity in certain circumstances
        3.  Qualified immunity
            a.  Amy did not directly commit certain constitutional torts

         b.  Amy did not violate, or is entitled to qualified immunity as to right to counsel

         c.  Amy's act and omission caused violations of Hanas's constitutional rights

              i.  Section 1985 was not violated

              ii.  Section 1986 was not violated

              iii.  Tort causation

VI.  Reginald Coleman

    A.  State action

    B.  Immunity

    C.  Direct constitutional torts

        1.  Equal protection

        2.  Free exercise

        3.  Right to counsel

        4.  Establishment clause

    D.  Conspiracy to commit constitutional violations

VII.  Damages

VIII.  Next steps

I.  Introduction

After pleading guilty to possession with intent to deliver marijuana, Joseph Hanas had to choose between going to prison or entering a faith-based rehabilitation program run by Inner City Christian Outreach (ICCO) in Flint, Michigan.  He opted for the residential placement.  At ICCO, Pastor Dwight Rottiers and other Inner City staff prevented Hanas from practicing Catholicism and forced him to participate in worship services and Bible studies grounded in the Pentecostal tradition.

This lawsuit does not directly deal with the question whether the Genesee County Drug Court's ultimatum to Hanas was constitutional.  To address that issue, Hanas filed a petition asking the Court to grant a writ of habeas corpus.  By agreement of the parties, the court will consider that petition after this case is concluded.   Rather, this lawsuit focuses on the actions of some of the people who carried out the Drug Court's order.  In addition to Inner City Christian Outreach and Dwight Rottiers, the named defendants include Stanette Amy, a case manager and social worker employed by the Drug Court, as well as Reginald Coleman, a paid Drug Court

consultant who introduced Inner City Christian Outreach to the Drug Court and runs a Christian substance abuse ministry that works with people from ICCO.  Invoking 42 U.S.C. § 1983, Hanas's complaint alleges that the defendants, acting under color of law, either violated, conspired to violate, or failed to prevent violations of Hanas's constitutional rights of free exercise of his religion, freedom from government establishment of religion, and equal protection under the law, as well as his Sixth Amendment right to counsel, as he was a criminal defendant while he was at ICCO.

Plaintiff Hanas filed a motion for summary judgment as to all defendants.  Amy filed a motion for summary judgment, in which Reginald Coleman concurred.  Pastor Rottiers and Inner City Christian Outreach did not respond to Hanas's summary judgment motion, nor did they appear for the November, 2007 hearing on the cross-motions.  For the reasons that follow, the court grants in part and denies in part Hanas's motion for summary judgment.  The court denies in part and grants in part Amy's motion, as well as Coleman's concurrence to the motion.   Amy and Coleman bear no liability for their actions before Hanas's placement at Inner City Christian Outreach.  The following chart summarizes the court's decision.

| Count | Rottiers and ICCO | Coleman | Amy |
|---|---|---|---|
| Free exercise (I) | Liable | Not liable | Liable, though factual scope to be determined |
| Establishment Clause (II) | Liable | Liable | Liable, though factual scope to be determined |
| Right to counsel (III) | Liable | Liable | Liable, though factual scope to be determined |
| Equal protection (II) | Hanas motion denied | Not liable | Not liable |
| Conspiracy (IV) | Hanas motion denied | Not liable | Not liable |
| Failure to prevent violations (V) | Not alleged | Not alleged | Not liable |

II.  Facts

In March of 2002, Hanas appeared in Genesee County Circuit Court for his arraignment. He pleaded guilty to possession with intent to deliver marijuana.

Genesee County Circuit Court had established a Drug Court. In Drug Court, once someone pleaded guilty to a drug offense, the defendant may have been eligible to participate in a Drug Court rehabilitation program. Instead of being sentenced after the guilty plea, the Drug Court ordered the prisoner to undergo rehabilitative services without being incarcerated. If the prisoner completed the program successfully, then the original charges against him would be dismissed.

After Hanas's guilty plea on March 25, 2002, Hanas was allowed to participate in the Drug Court program. The Court delayed sentencing for one year so that Hanas could receive rehabilitative services while the Drug Court monitored his progress. *See* Amy's Motion for Summ. J., docket entry 18, at 4 [hereinafter Amy Mot.].

Hanas entered a Salvation Army rehabilitation program in Flint in Fall 2002, but he failed to complete the program. He went home, started drinking and attempted to re-admit himself at the Flint Salvation Army rehabilitation program. They refused him, because he was under the influence of alcohol at that time. Amy Mot. at 4.

Hanas later entered a rehabilitation program at the Salvation Army in Grand Rapids. But he failed to complete this program successfully as well.[1]

After coming back home, Hanas was charged in January, 2003 with being a minor consuming, purchasing, and/or possessing alcohol.

A. Before Placement at Inner City Christian Outreach

---

[1] At a March 13, 2003 hearing before Genesee County Circuit Judge Ransom, Hanas's counsel explained that these admissions into the Salvation Army programs were voluntary, not court-ordered, as Hanas was released into the care of his family while sentencing was delayed. Tr. of Mar. 13, 2003 Hrg. at 8, Amy Mot., Ex. 10.

### 1. January 23, 2003 hearing

Because of this alcohol violation, Hanas appeared before Judge Ransom of the Drug Court on January 23, 2003.

Hanas expressed interest in the New Paths day rehabilitation program. Tr. of Jan. 23, 2003 Hrg. at 4, Amy's Mot., Ex. 6. Stanette Amy, a Drug Court caseworker/social worker with a law degree, reported to Judge Ransom that she thought Hanas "could benefit by a full-length program." *Id.* Reginald Coleman, a paid Drug Court consultant, was also present at the hearing, though he did not give a recommendation to the Court. *See* Coleman Dep. at 32, Plaintiff's Mot. for Summ. J. As to All Defendants, docket entry 48, Ex. D [hereinafter Hanas Mot.] (Coleman was paid by the Drug Court). Judge Ransom continued the hearing to the next day to give some time to see which programs Hanas was eligible for.

### 2. January 24, 2003 hearing

The hearing started with Judge Ransom admonishing Hanas for not completing the Salvation Army programs successfully: "Well, Mr. Hanas, sort it out here. If you start and quit one program after another, there's going to come a point when there's going to be some consequence. Does that make sense? . . . [Y]ou're getting dangerously close to getting washed out here." Tr. of January 24, 2003 Hrg. at 6, Amy Mot., Ex. 7.

Hanas again expressed interest in going to New Paths, a day program. But Hanas, Amy reported, was ineligible for New Paths. Amy recommended that Hanas be placed in a residential program. She also said he would be helped by being away from home and being around men more. Tr. of January 24, 2003 Hrg. at 6-7, Amy Mot., Ex. 7. She believed that Hanas did not have funds to pay for a residential program and that he needed immediate placement, so Amy recommended that Judge Ransom place Hanas in Inner City Christian Outreach. Amy Aff. at 3, Amy Mot., Ex. 9.

This was not discussed at the January 24, 2003 hearing, but Amy now states in her affidavit that Hanas was the first person she had recommended that the Drug Court place at Inner City Christian Outreach. Amy Aff. ¶ 9, Amy's Supp. Br. Supporting Def. Amy's Mot. For

Summ. J., docket entry 55, Ex. 2 [hereinafter Amy Reply].  She also states that "while [she] was aware of Inner City Christian Outreach as a potential provider of services to Drug Court, it was not until the day before Judge Ransom sent Mr. Hanas to Inner City Christian Outreach that [she] had any opportunity to inquire about, and receive information about, the nature of their program." *Id.* at ¶ 10.  She states in her affidavit that she knew that ICCO was faith-based, but that it didn't raise any red flags for her because all "programs involved in substance abuse rehabilitation . . . had . . . faith based programs." *Id.* at ¶ 12.  Rottiers later testified at a deposition that Coleman helped him introduce ICCO to the Drug Court.  Hanas's Response to Def. Stanette Amy's Mot. for Summ. J. at 4 [hereinafter Hanas Resp.].

At the hearing, Hanas's counsel, Yiannatji, said he had conferred with Rottiers and reported to Judge Ransom that ICCO provided better rehabilitative job training than New Paths did.  Tr. of January 24, 2003 Hrg. at 7, Amy Mot., Ex. 7.

Judge Ransom therefore ordered that Hanas be placed at ICCO and set a follow-up hearing for March 6, 2003.  Tr. of January 24, 2003 Hrg. at 13, Amy Mot., Ex. 7.

Judge Ransom concluded the hearing by exhorting Hanas to complete the program at Inner City Christian Outreach successfully.  In response to the judge's statement that "you either complete the program, or chances are you're going to prison," Hanas replied, "All right.  I got no choice then but to complete the program."  Tr. of January 24, 2003 Hrg. at 9, Amy Mot., Ex. 7.  Amy reinforced this ultimatum, saying "And remember, the rules of Pastor Rottiers'[s] Program are the rules of the Court.  It's just the same.  You screw up that, you screw up this." *Id.* at 13.


B.  After Placement

Things changed once Hanas arrived at Inner City Christian Outreach.  Hanas alleges that:

1.  ICCO staff told him that Catholicism is witchcraft.

2.  His rosary and prayer book were confiscated.

3.  He was prevented from seeing a priest or deacon.

4.  Rottiers told one of Hanas's relatives that Hanas had given up his freedom of religion

when he signed up for ICCO.

5.     ICCO systematically indoctrinated Hanas with Pentecostalism, required him to study the Bible, and forced him to attend Pentecostal worship services.

6.     Hanas was not permitted to speak with his attorney.

All of these abuses, Hanas alleges, were done under the threat of expulsion from Inner City Christian Outreach, in which case Hanas would probably go to prison.

Judge Ransom states in his affidavit that Hanas's mother confronted him in court "several days following" Hanas's placement on January 24, 2003 into ICCO with concerns she had about the religious nature of Inner City. J. Ransom Aff. at 3, Amy Reply, Ex. 1. This is confirmed by an affidavit from Hanas's mother, Chris. Hanas Resp., Attach. B. at 4, ¶ 12. She states that on January 30, 2003, she and her sister "went to the Drug Court where a ceremony was taking place . . . to talk to Judge Ransom about Joe. We told the Judge about the religious activity at ICCO, and that Joe was getting no help and no substance abuse counseling. Diane gave the Judge a letter she had written. The Judge put her letter on his bench, and told us that what was happening at ICCO was all part of the process." *Id.*

Judge Ransom was out of town from January 31, 2003 through February 14, 2003. *Id.*

During this time while Judge Ransom was gone, Hanas's attorney, Yiannatji, filed affidavits describing abuses occurring at ICCO. For instance, he filed an affidavit on February 14, 2003 outlining the constitutional violations taking place. Hanas Resp., Attach. D, Ex. B.

Hanas alleges that Stanette Amy rebuffed his mother and aunt's attempts to stop the abuses at Inner City Christian Outreach and that she took no action to prevent what was going on despite having the power to do so. For instance, after his placement at ICCO, Hanas had written a nine-page letter to Amy that suggested that First Amendment violations were taking place. *See* Hanas letter, Hanas Resp., Attach. B., Ex. D. Amy was aware of the free exercise and Establishment Clause violations, as she had made arrangements for Hanas's deacon to visit, but

failed to act on a February 5 letter that Hanas's mother had written to Amy, which explained that Rottiers had blocked the deacon from seeing Hanas. *See* Chris Hanas letter at 4, Hanas Resp., Attach. B, Ex. E.

Amy's compliance log indicates that on February 11, 2003, she told Pastor Rottiers that any order of ICCO was an order of the Court, thereby reinforcing what she reasonably should have known were egregious constitutional violations. Hanas Resp., Attach. H, Dep Ex. 6 at 1. Hanas also argues that ICCO prevented him from seeing his attorney, and that Amy took no action to investigate or remedy this civil rights violation. Hanas Mot. at 19.

When Judge Ransom returned, he says Amy and other members of his staff told him about complaints from Hanas's mother. Consequently, he convened a Drug Court team meeting on February 20, 2003. J. Ransom Aff., Amy Reply, Ex. 1 at 3. Hanas points out, though, that Amy testified at her deposition that she did not alert the Judge to the complaints when he got back, because she said Judge Ransom "was fully aware of the problems" which would have been discussed at the February 20 meeting, even though she couldn't specifically recall whether they were. Hanas's Reply in Supp. Of Pl.'s Mot. For Summ. J. as to all Defs. at 5 n.3 [hereinafter Hanas Reply]. Based upon this meeting and a request from Hanas's attorney, Judge Ransom set a hearing for February 27, 2003, which was in advance of the previously scheduled March 6 follow-up date. Amy Reply, Ex. 1 at 3.

### 1. February 27, 2003 hearing

This hearing took place after an off-the-record conference the previous day where Hanas's counsel, Yiannatji, was present.

The Court acknowledged that ICCO did not provide any drug treatment. Instead, it stated that Inner City Christian Outreach was merely a residential placement, where Hanas could receive outpatient drug treatment services from another provider. Tr. of February 27, 2003 Hrg. at 5, Hanas Resp., Attach H., Dep. Ex. 16. Hanas now states in his affidavit that outpatient drug counseling might only have been available after someone had stayed at Inner City Christian Outreach for ten months. *See* Hanas Aff. at 2, ¶ 9, Hanas Resp., Attach. A. Rottiers later

testified at his deposition that ICCO referred residents to Coleman's religious substance abuse counseling program. Hanas Resp. at 4.

Hanas's counsel informed the court of the constitutional violations that were taking place. Tr. of February 27, 2003 Hrg. at 11, Hanas Resp., Attach H., Dep. Ex. 16. But Judge Ransom basically said that Hanas knew what he was getting into when he opted for the placement at Inner City Christian Outreach instead of prison. Tr. of February 27, 2003 Hrg. at 7, Hanas Resp., Attach H., Dep. Ex. 16.

Hanas's counsel brought up the possibility of alternatively placing Hanas at the Salvation Army, but Judge Ransom refused to send Hanas, as he believed Hanas had already failed twice at the Salvation Army. Tr. of February 27, 2003 Hrg. at 7-8, Hanas Resp., Attach H., Dep. Ex. 16.

When Hanas's attorney asked the Court for an order allowing Hanas's priest to visit at ICCO, Stanette Amy stated, "Pastors Rottiers said that . . . they would not have the other faiths coming in and each doing their own thing while he's at the church." Tr. of February 27, 2003 Hrg. at 9, Hanas Resp., Attach H., Dep. Ex. 16.

2.  March 13, 2003 hearing

Again at this hearing, Hanas's counsel informed the Court of the constitutional violations that were going on. Judge Ransom again responded that Hanas had a choice between Inner City Christian Outreach and jail and that Hanas had freely opted for ICCO.

Hanas's attorneys, this time including a couple affiliated with the American Civil Liberties Union, asked that Hanas be placed in a secular alternative, like New Paths.

Judge Ransom refused, saying that Hanas wasn't finishing his programs and was "jumping from one program to another." Tr. of Mar. 13, 2003 Hrg. at 22, Amy Mot., Ex. 10. The Judge told one of the ACLU attorneys, "I could probably give you a half a dozen alternative programs that he could have the opportunity to be in. . . . [H]is religious beliefs don't play any role whatsoever in what I'm doing here." Tr. of Mar. 13, 2003 Hrg. at 25, Amy Mot., Ex. 10.

Judge Ransom then removed Hanas from Inner City Christian Outreach and sentenced

Hanas to six months of incarceration followed by four years of probation.

III.  Relief Requested and Procedural Framework

Hanas asks the court for declaratory relief, as well as compensatory and punitive damages.  Complaint at 10.

The power to hear cases under the Declaratory Judgment Act is discretionary. 28 U.S.C. § 2201(a); *see also Adrian Energy Assocs. v. Mich. PSC*, 481 F.3d 414, 421 (6th Cir. 2001) (Section 2201(a) "of the Act gives district courts statutory discretion to decide whether to entertain actions for declaratory judgments. Section 2201 explicitly provides that 'any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration.'") When deciding whether to exercise jurisdiction in a declaratory judgment action, courts are to look to five factors:

> (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations issues; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 965-68 (6th Cir. 2000).

Genesee County Drug Court stopped making referrals to Inner City Christian Outreach. *See* Tr. of Jan. 22, 2004 Hrg. at 6-7, Hanas's Resp., Ex. J.  And Coleman testified at his 2006 deposition that he was no longer a paid consultant of the Drug Court since 2004.  Nevertheless, the court believes that declaratory judgment is still appropriate, because, without putting the public on notice by announcing declaratory relief, there is "some likelihood of the recurrence" of these kinds of constitutional torts .  *Cf. Williams v. General Foods Corp.*, 492 F.2d 399, 406 (7th Cir. 1974) (declaratory relief available as to discriminatory employment policy, even though policy had been discontinued, because Title VII litigation "involv[ed] the public interest" and

"was intended to effectuate congressional policies" and there was likelihood of recurrence of discriminatory policy). Declaratory relief serves a useful purpose. Furthermore, declaratory relief will settle the core of this § 1983 suit without encroaching upon state court jurisdiction.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the initial responsibility of demonstrating that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All inferences must be made in a light most favorable to the nonmoving party. *Matsushita Electrical Industrial Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586
(1986).


IV. Inner City Christian Outreach and Dwight Rottiers

A. State action

Rottiers and ICCO must have acted under color of law to be liable under 42 U.S.C. § 1983. Uncontested facts support the court's determination that they did act under color of law.

Rottiers and Inner City Christian Outreach received the court's endorsement of their authority. For instance, Judge Ransom and Amy admonished Hanas to follow the rules of Pastor Rottiers's program. As Amy said, "the rules of Pastor Rottiers'[s] program are the rules of the Court." Tr. of January 24, 2003 Hrg. at 13, Amy Mot., Ex. 7. Rottiers and Inner City Christian Outreach acted jointly with the Drug Court. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 ("To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents."). Alternatively, there was a symbiotic relationship between Rottiers, ICCO, and the Drug Court, as the Drug Court provided Inner City Christian Outreach with a source of referrals, while ICCO served the Drug Court's need for a no-cost residential program. *See Burton v. Wilmington*

*Parking Authority*, 365 U.S. 715, 724 (1961).

And because Rottiers and Inner City Christian Outreach are not state officers, the court does not need to proceed through the qualified immunity analysis to decide their liability. *See Dennis v. Sparks*, 449 U.S. 24, 29 (1980) (private party who had acted under color of law was nevertheless not entitled to immunity).

B.  Issue of fact

Defendants Rottiers and Inner City Christian Outreach have not presented evidentiary material, such as affidavits, to oppose Hanas's motion for summary judgment.  Nor did Rottiers and ICCO appear for the motions hearing.  Therefore, court must determine whether it is "appropriate" to enter summary judgment against Rottiers and Inner City Christian Outreach under Fed. R. Civ. P. 56(e).  In essence, the court must "search the record and independently determine whether or not a genuine issue of fact exists."  10B Wright, Miller, and Kane, Federal Practice and Procedure § 2739 n.24 at 395 (1998).  Inferences drawn from Hanas's filings must be viewed in the light most favorable to Rottiers and ICCO.  *Id.* at n.22 at 394.  Rottiers never testified under oath at the March 13, 2003 hearing, so the only evidence that might indicate a genuine issue of fact are the excerpts from Rottiers's deposition.

The following are the factual issues that Rottiers disputes, presented in abbreviated form.

•       Says he did not tell Amy that other faiths cannot come into ICCO.  Rottiers Dep. at 76, Hanas Mot., Ex. C.

•       Would not have prevented Hanas from receiving communion from a Catholic priest at ICCO.  Rottiers Dep. at 84.

•       Did not tell Amy that he wouldn't allow a deacon to see Hanas.  Rottiers Dep. at 77.

•       Did not tell Hanas's aunt that no other clergy allowed at ICCO.  Rottiers Dep. at 95.

•       Does not recall telling aunt that Joseph Hanas gave up his freedom of religion when he accepted the placement at ICCO.  Rottiers Dep. at 96.

•       Did not call, and states that none of overseers called, a rosary or Catholic prayer book an item of witchcraft.  Rottiers Dep. at 97.

-12-

•       Did not tell Joseph Hanas that he could practice his freedom of religion in jail.  Rottiers Dep. at 98.

C.  Free exercise

Despite the list of facts Rottiers disputes, there is no evidence disputing that Hanas's rosary book and prayer book were confiscated.  This conduct violates the free exercise clause of the First Amendment.  *See* Hanas Mot. at 12 (citing *Hudson v. Palmer*, 468 U.S. 517, 547 n.13 (1984) (Stevens J., conc. in part and diss. in part) ("A prisoner's possession of . . . personal property relating to religious observance, such as a Bible or a crucifix, is surely protected by the Free Exercise Clause of the First Amendment.")).  Nor can defendants reasonably argue that confiscating the rosary and prayer book served any penological interest.  *Turner v. Safley*, 482 U.S. 78, 89 (1987).    Summary judgment is therefore entered against ICCO and Rottiers on the free exercise portion of count I.

D.  Establishment Clause

As for the Establishment Clause claim in count I, Rottiers did state that ICCO was a "Christ centered Bible teaching program.  That's what we're all about.  *Anything other than that we do not allow in there*."  Rottiers Dep. at 77 (emphasis added).    However, he also said that he did not tell Amy or Hanas's aunt that other faiths were not allowed at ICCO.  Nevertheless, Rottiers's statement does not create a genuine issue of material fact as to the Establishment Clause violation, because his deposition testimony only says that he did not *tell* Stanette Amy or Hanas's aunt about not allowing other faiths at ICCO.

The Establishment Clause violation here is flagrant, because Rottiers and Inner City Christian Outreach acted with the authority of the state, and Hanas faced incarceration if he were expelled for resisting Rottiers's directives on how to worship.  Accordingly, summary judgment is entered against Inner City Christian Outreach and Rottiers with respect to the Establishment-Clause portion of count I.

E.  Right to counsel

Nor is there evidence disputing that Hanas's right to counsel was violated by Rottiers and

ICCO.  Rottiers and Inner City prevented Hanas from seeing his attorney, and Hanas was a criminal defendant who was being monitored by the Drug Court to see whether he would have to go to prison.  *See* Hanas Mot. at 12-13.  Summary judgment is entered against Rottiers and ICCO on count III.

### F.  Equal protection

Hanas has not shown that there were other people who adhered to conventional precepts who were allowed to pursue their religion.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  Hanas's only argument in support of his equal protection claim is that he was treated "far more harshly than other residents because he wished to practice his faith (and then because he sought an attorney's help so he could do so)."  Hanas Mot. at 12.  There is no evidence to support this argument.  Therefore, Hanas's motion for summary judgment on the equal protection portion of count II is denied, and Amy's motion and Coleman's concurrence are granted.

### G.  Conspiracy

The elements of a conspiracy claim under 42 U.S.C. § 1985(3) do not merely require that an agreement be made for the purpose of depriving someone's constitutional rights.  Rather, the conspiracy must exist for the purpose of depriving a person or class of persons of equal protection of the law.  *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005).  Hanas has not shown how he was a member of a class that was treated differently pursuant to a conspiracy from a similarly situated class.  Therefore, his motion for summary judgment is correspondingly denied as to all defendants, and Amy's motion and Coleman's concurrence are granted.


### V.  Stanette Amy

The parties do not dispute that Stanette Amy acted under color of law under 42 U.S.C. § 1983.  Nor do they dispute that, as a government officer, the court must apply either absolute or qualified immunity analysis to her actions.

### A.  Pre-Placement

Amy has absolute immunity from damages for her failure to investigate Inner City Christian Outreach before recommending it to the Drug Court. *See Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (absolute quasi-judicial immunity extends to actions "so integral or intertwined with the judicial process that these [actors] are considered an arm of the judicial officer who was immune"). Although absolute immunity does not shield against liability for declaratory relief, Hanas's request for declaratory relief is denied.

Hanas cites *Warner v. Orange County Dep't of Probation*, 115 F.3d 1068, 1073 (2d Cir. 1997) for the proposition that the intervening act of a sentencing judge in adopting the recommendation of a probation officer does not necessarily relieve the probation officer of liability. However, *Warner* is distinguishable: the defendant in *Warner* did not raise as an affirmative defense its immunity. *See Warner*, 115 F.3d at 1071 n.1.

Unlike the defendant in *Warner*, Amy argues that she is protected by absolute immunity because her recommendation to the Drug Court was the performance of a quasi-judicial function. The court agrees. She was the eyes and ears of the Drug Court, doing the legwork in assessing Hanas's needs and figuring out what could address those needs. Her role was similar to that of a probation officer who, in preparing presentence reports, provides the court with "information facilitating the meaningful exercise of its sentencing discretion" and performs functions closely associated with judges performing judicial functions, that is, presumably, deciding cases. *See Dorman v. Higgins*, 821 F.2d 133, 137 (2d Cir. 1987). Though Hanas was not sentenced to Inner City Christian Outreach, he was still ordered by the Drug Court to be placed at ICCO. Amy's recommendation was critical for Judge Ransom's exercise of his discretion.

Furthermore, if one argues that Amy's failure to adequately investigate the program led to the reasonably foreseeable result that the sentencing judge would adopt her recommendation, which in turn led to the constitutional violations at ICCO, then her recommendation must have been closely intertwined with the judicial process. By proving causation under tort principles, plaintiff would have also made the argument for Amy's absolute immunity from damages.

However, Amy does not have absolute or qualified immunity from declaratory relief. *See*

*Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir. 1996) (absolute); *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001) (qualified). The court assumes, without making such a finding, that there is no genuine issue of material fact as to whether Amy's conduct was adequately linked by tort principles of causation to the injuries that Hanas suffered, notwithstanding the actions of Judge Ransom and ICCO as possible superseding causes. But even with that assumption, the facts do not support the conclusion that her failure to adequately investigate ICCO before making her recommendation rose beyond gross negligence. *See Lewellen v. Metropolitan Gov't of Nashville & Davidson Cty.*, 34 F.3d 345, 348, 351 (6th Cir. 1994) (neither negligent nor grossly negligent deprivations of rights are actionable under § 1983). Hanas has not presented any facts that suggest that Amy deliberately failed to investigate ICCO with an intent to make an improperly founded recommendation to Judge Ransom.

Amy argues that Hanas's complaint on its face fails to state a § 1983 claim, because only intentional deprivations of rights are cognizable. Amy Reply at 7. However, the complaint does not expressly circumscribe its claims as only alleging negligent or grossly negligent deprivations of rights. But with regard to Amy's liability for her pre-placement actions, Hanas's request for declaratory relief is denied and summary judgment is entered in Amy's favor.

### B. Post-placement

Hanas argues that Amy's complicity in the constitutional violations after he was placed at ICCO is a basis for her liability. In particular, Hanas points to Amy's failure to prevent the constitutional violations that she knew were going on, as well as Amy's reinforcement of ICCO's violations when she told Rottiers that he had the backing of the Court.

Part of Amy's role after Hanas's placement was similar to a probation officer ensuring that a probationer was complying with the terms of probation. As such, she contends that she is entitled to absolute quasi-judicial immunity. *See Loggins v. Franklin County Ohio*, 218 Fed. Appx. 466, 476 (6th Cir. 1990). While Judge Ransom was out of town, Amy argues, she merely reiterated what the Judge had said in Court: that Hanas had to follow the rules of the program.

The court disagrees.  Amy is not entitled to absolute quasi-judicial immunity for her acts after Hanas was placed at Inner City Christian Outreach.

<u>1.  Amy does not receive absolute immunity</u>

The unpublished Sixth Circuit and Eastern District of Michigan cases cited by Amy are not binding on this court, and the court chooses not to follow their logic.  Amy Reply at 2-3.  Instead, the court is persuaded by the Fifth Circuit's reasoning in *Galvan v. Garman*, 710 F.2d 214 (1983).  There, the Fifth Circuit declined to extend absolute immunity to a probation officer's  actions that were removed from the presentence report process.  In *Galvan*, the plaintiff had been sentenced to probation.  Someone else with the same name as the plaintiff had been jailed for driving while intoxicated.  The defendant probation officer saw plaintiff's name on the jail roster and prepared a motion to revoke his probation, which resulted in plaintiff's temporary incarceration.  *Galvan* cited two reasons for its ruling: the probation officer acted at her own initiative, and she acted at a phase of the criminal process less intimately associated with the judiciary.  *Galvan*, 710 F.2d at 215.  Though the Fifth Circuit viewed the *Galvan* probation officer's actions as taken at her own initiative, she was simply attempting to enforce compliance with the terms of probation that the sentencing judge had imposed.  Nevertheless, the Fifth Circuit did not afford her absolute immunity.

Similarly, Stanette Amy was trying to enforce compliance with Judge Ransom's order that Hanas complete the program at Inner City Christian Outreach to avoid going to jail.   But that is not enough under *Galvan* to receive absolute immunity.  As for acting at her own initiative, just as the sentencing judge in *Galvan* did not tell the probation officer to select the incorrect person for probation revocation, there is no evidence that Judge Ransom directed Amy to reinforce Rottiers's conduct notwithstanding the constitutional violations that Rottiers might sponsor.  Nor is there evidence that Judge Ransom told Amy to ignore any constitutional violations that might occur.

As for *Galvan*'s second factor, although Drug Court judges in general are actively involved while a criminal defendant's progress in rehabilitation is being assessed, Judge Ransom

was out of town and uninvolved when Amy incurred liability (as discussed below) for her acts and omissions after Hanas was placed at ICCO.

> ## 2.  A caseworker in Amy's position could receive absolute immunity in certain circumstances

The court does not decline to give Amy absolute immunity simply because her actions took place after her initial recommendation, or simply because her actions physically took place outside of a courtroom, as the parties may have suggested at the motions hearing.  Those factors do not weigh heavily in a functional assessment of whether her conduct is closely connected enough to a judge's judicial action.  The Drug Court envisions ongoing monitoring of criminal defendants, requiring caseworkers like Amy to make recommendations as to a defendant's progress in a particular rehabilitation program on an ongoing basis.  Accordingly, the court's ruling does not necessarily mean that a caseworker like Amy would not be entitled to absolute immunity from a suit, for instance, by a disgruntled Drug Court participant who didn't like the substance of the caseworker's ongoing assessments of the participant's rehabilitation, assessments which would be reported to the Drug Court.

Hanas, however, does not challenge Amy for improperly assessing his progress in a rehabilitation program.  Absolute immunity would probably apply against such a claim, because a caseworker, or a probation officer, has to be able to make recommendations to a judge without fear of litigation brought by a criminal defendant.  Rather, Hanas challenges Amy's failure to take appropriate action in response to the obvious constitutional violations he was suffering.

> ## 3.  Qualified immunity

Given that Amy has not met her burden to show that absolute immunity analysis should govern, the court applies the qualified immunity analysis.

> ### a.  Amy did not directly commit certain constitutional torts

The court has already determined that Hanas has not shown that anyone violated his equal protection rights.  Hanas's complaint alleges that all of the defendants committed constitutional torts contravening Hanas's free exercise and Establishment Clause rights.  The

court fails to see how Amy was a direct tortfeasor of any of these wrongs.

### b. Amy did not violate, or is entitled to qualified immunity as to right to counsel

As for Hanas's right to counsel, Amy gave short shrift to or appeared to verbally rebuff the attempts by Hanas's mother and aunt to retain counsel. For instance, when Hanas's mother raised the idea of hiring a lawyer, Amy dismissively said "that was fine, if [Hanas's mother] wanted to waste [her] money." Chris Hanas Aff. at 6, ¶ 19, Hanas Resp., Ex. B. Since Amy's words carried the authority of the state, her verbal acts, though they might be innocuously brushed off in ordinary life, could have violated the Constitution. Although a criminal defendant awaiting sentencing certainly has a right to counsel, Hanas has not shown that his broad right to counsel includes the particular right to be free from a state officer's dismissive attitude and offhand remarks in response to his attempts to retain counsel, or that this particular right was clearly established. Hanas even agrees that "ultimately Amy did not dissuade Hanas from retaining counsel." Hanas Mot. at 17. Therefore, Hanas's motion is denied and Amy's motion for summary judgment is accordingly granted.

### c. Amy's act and omission caused violations of Hanas's constitutional rights

#### I. Section 1985 was not violated

Although Amy may not have directly committed any of the torts at Inner City Christian Outreach, she did reinforce Rottiers's conduct by assuring him that he had the backing of the Drug Court. Hanas submits that this reinforcement creates liability for a conspiracy under 42 U.S.C. § 1985. However, showing that there was a conspiracy to violate constitutional rights does not state a claim of conspiracy under § 1985(3), for the reasons already discussed. *See supra*, pt. IV.G. Hanas's motion is denied, and Amy's motion for summary judgment is correspondingly granted.

#### ii. Section 1986 was not violated

Accordingly, Hanas's § 1986 claim against Amy is dismissed, because § 1986 imposes

liability on those who have knowledge of the wrongs prohibited by § 1985 yet fail to prevent them. Without a violation of § 1985, Hanas cannot show a violation of § 1986. *See Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir. 1980). Hanas's motion is denied, and Amy's motion for summary judgment is correspondingly granted.

### iii.  Tort causation

Even if §§ 1985 and 1986 do not support Hanas, Amy is liable under tort principles of causation for the ongoing harms committed at Inner City Christian Outreach from the time she reasonably had notice of the violations until she reported the violations to the court. Amy's (1) act and (2) omission in the face of Rottiers's conduct caused the constitutional deprivations that Hanas suffered during the relevant time period, which ran at least until Judge Ransom had sufficient notice of the violations. Amy is therefore liable for at least some of the harm that Hanas suffered. However, it is a genuine issue of material fact as to when Judge Ransom had sufficient notice of the violations. Furthermore, it is a genuine issue of material fact as to how Amy's act and omission may have caused Hanas's harms even after Judge Ransom was on notice of the violations. The court needs to receive evidence about how Judge Ransom would have relied on a considered investigation and report that Amy should have made, because Amy's report of constitutional violations may have carried different weight with Judge Ransom than reports from Hanas, his relatives, and his counsel. In other words, though Judge Ransom may have reasonably had notice of the constitutional violations from Hanas's filings, for instance, the factual question remains as to how Amy's conduct was causally linked to harms that Hanas suffered even after Judge Ransom knew what was happening at Inner City Christian Outreach. Given these outstanding factual issues, summary judgment is inappropriate. Correspondingly, Hanas's motion is granted in part and denied in part, and Amy's motions is denied.

The act that Amy committed was her reinforcement of Rottiers.

Her omission was her failure to investigate and report the constitutional violations to a judge while Judge Ransom was gone. When she discovered what was happening at ICCO, she could have brought the matter to the attention of a judge available to hear emergency matters in

Genesee County Circuit Court, as Judge Ransom was out of town. Certainly, if a Drug Court defendant had been suffering extreme deprivations at a recent placement, such as a placement's failure to provide access to necessary emergency medical care or bodily harm, a caseworker would not have waited for the usual judge to return before doing what was in her power to put an end to the harm. What Hanas suffered was not so extreme, of course. But the constitutional violations were serious.

It is true that the record suggests that Judge Ransom had some notice before he left town that something was up at Inner City Christian Outreach, as Hanas's mother and aunt approached him in Drug Court on January 30, 2003. Amy argues that Judge Ransom's awareness of complaints about Inner City Christian Outreach relieves her of liability for any purported failure to act. Amy Reply at 4. However, Amy does not assert that she knew that Judge Ransom's level of awareness as to the gravity and breadth of constitutional violations was adequate as of January 30, 2003, or that she had made a report of the violations to Judge Ransom herself as of January 30. Considering (1) that Judge Ransom left the letter on his bench the day before he was leaving for two weeks; (2) that the encounter between Hanas's mother and aunt and Judge Ransom does not appear to have been scheduled on the court calendar; (3) that Judge Ransom's affidavits do not show that on January 30, 2003 he was either moved by or dismissive of the stories of constitutional violations; and (4) that complaints from a criminal defendant's family could not reasonably carry the same weight as the considered investigation of a case manager, the court believes Amy's liability for her failure to report the ongoing violations to a judge is a factual question that cannot be decided on the instant motions.

At the hearing on the cross-motions for summary judgment, counsel for Amy argued that Amy's failure to "do something more quickly enough to respond to what was going on at ICCO" amounts at most to gross negligence. Although Amy's counsel later stated that Amy's failure to act would be insufficient for the court to decide that Amy lost qualified immunity, the court believes, and Amy's filings confirm, Amy Reply at 7, that the quantum of Amy's intent with regard to her failure to act concerns whether Amy's omission is even cognizable under § 1983.

In other words, whether Amy was merely negligent or was intentional in her failure to prevent the constitutional violations concerns the cognizability of Amy's omission under § 1983, not whether Amy loses in the qualified immunity analysis. But the facts narrating what Amy knew was going on at ICCO are so overwhelming that they compel a conclusion that Amy deliberately failed to act according to her opportunity to prevent Hanas's constitutional deprivations. The court's conclusion does not entail a conclusion that Amy's failure to act showed a malicious intent to violate the Constitution. Rather, her failure to act could only have arisen from an intent to refrain from reporting the constitutional violations sooner than she did, and this intent had to have been more than negligence or even gross negligence.

But for Amy's act and omission, Hanas probably would not have continued to suffer, at a minimum, during the time period that began when Amy reasonably had notice of the violations and that ended when Judge Ransom had sufficient notice. Depending on how a report of constitutional violations by Amy would have been relied upon by Judge Ransom, then Amy's act and omission could also be a cause-in-fact of Hanas's harms even after Judge Ransom was on notice from other sources. Moreover, her act and omission were a proximate cause of Hanas's ongoing deprivations, because it was foreseeable that Rottiers would continue to deprive Hanas of his rights knowing he had the backing of the Drug Court and knowing that he would not be stopped by a judge of the Genesee County Circuit Court. It does not matter that Rottiers and ICCO also caused the harms suffered by Hanas, because both Rottiers and Amy's tortious acts were "substantial factors in bringing about the harm." *See* Restatement (Second) of Torts § 439 (1965) (contributing act of third party that is substantial factor in bringing about harm does not protect actor from liability if the effects of the actor's conduct "actively and continuously operate to bring about harm").

A word on immunity. The court has already explained why absolute quasi-judicial immunity does not protect Amy's actions after Hanas's placement at Inner City Christian Outreach. Nevertheless, the court emphasizes that establishing the causal chain between Amy's failure to report the violations and a judge's decision to keep Hanas at ICCO does not prove that

Amy is entitled to absolute immunity.  Unlike the pre-placement recommendation that Amy made, *see supra*, pt. IV.A, Amy's reinforcement of Rottiers and her failure to report the abuses to a judge were distinct from assessments she may or could have made about Hanas's progress in rehabilitating himself.  That kind of assessment would be protected by absolute immunity.  Amy's actions with regard to the constitutional abuses are not protected, even if the causal chain between her actions and Hanas's harms necessarily involves the decision of a judge on whether to keep Hanas at ICCO.

Although plaintiff must demonstrate causation to show that the Constitution was violated, the court is satisfied that if Hanas is successful in doing so, then Amy will not be protected by qualified immunity, because Hanas's constitutional rights were clearly established.   Hanas's right under the Establishment Clause to be free from state coercion was clearly established since 2001.  *See Inouye v. Kemna*, 504 F.3d 705, 714 (9th Cir. 2007) (as amended) (state cannot compel parolee to attend religion-based rehabilitation program, such as Alcoholics Anonymous, under threat of incarceration).    So was Hanas's right to free exercise clearly established.  *See supra,* part IV.C; *Hudson v. Palmer*, 468 U.S. 517, 547 n.13 (1984) (Stevens J., conc. in part and diss. in part) ("A prisoner's possession of . . . personal property relating to religious observance, such as a Bible or a crucifix, is surely protected by the Free Exercise Clause of the First Amendment.").  Finally, Hanas's right to counsel was also clearly established, as he was a criminal defendant awaiting sentencing. *See Mempa v. Ray*, 389 U.S. 128, 134 (1967) ("appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected"); *see also Inouye*, 504 F.3d at 715 (law may be clearly established even if there is no case directly on point, if in the light of pre-existing law, the unlawfulness is apparent).

VI.  Reginald Coleman

Coleman has only offered *pro forma* concurrences to Stanette Amy's filings.  He lifts language from Amy's affidavit, and his affidavits do not properly respond to Hanas's allegations

against him.

A.  State action

Reginald Coleman introduced Inner City Christian Outreach to the Drug Court.  At the center of the nexus between ICCO and the Drug Court, he was a state actor.  As a paid Drug Court consultant who participated in the Drug Court team meetings, Coleman was a state officer, and the court must proceed through the absolute and qualified immunity analysis.

B.  Immunity

To the extent that Hanas attacks Coleman's activities prior to Hanas's placement at Inner City Christian Outreach, Hanas's motion for summary judgment is denied due to Coleman's absolute immunity for any advice he gave or could have given to Judge Ransom.  For the same reasons that Amy is entitled to absolute immunity, Coleman is absolutely immune as to his conduct before Hanas's placement.

Correspondingly, Coleman only receives qualified immunity for his acts and omissions after Hanas's placement.

C. Direct constitutional torts

1.  Equal protection

As stated earlier, Hanas has not shown that he suffered violations of his right to equal protection under the law.  Hanas's motion for summary judgment is therefore denied as to any equal protection violations directly committed by Coleman.  Summary judgment is entered in Coleman's favor as to the equal protection claim.

2.  Free exercise

Though Hanas's complaint alleges that all the defendants violated his free exercise rights, Hanas has not shown how Coleman directly violated any of Hanas's free exercise rights.  Nor has plaintiff pointed to any fact which would support a finding that Coleman knew that Hanas's free exercise rights in particular were violated.  Hanas's motion is denied, and Coleman's is granted.

3.  Right to counsel

Hanas states in his affidavit that Coleman, along with Rotters, told Hanas that if he did not tell his mother to stop "having the lawyer interfere," then Hanas would be thrown out of ICCO and would be sent to prison.  Hanas Decl. at 5, ¶ 16., Hanas Resp., Attach. A.  There is no genuine issue of material fact as to Hanas's factual assertion.  Summary judgment is therefore entered against Coleman for directly violating Hanas's clearly established right to counsel.

### 4.  Establishment Clause

Hanas argues that Coleman taught in the program at Inner City Christian Outreach, participating in the indoctrination.  Rottiers Dep. at 106, Hanas Mot., Ex. C.  There is no genuine issue of material fact as to Coleman's participation in the indoctrination.  Summary judgment is therefore entered against him for violating Hanas's clearly established rights under the Establishment Clause.


### D.  Conspiracy to commit constitutional violations

Like Amy, Coleman is not liable for conspiracy under § 1985(3).  Because he joined Amy's motion, summary judgment is correspondingly entered in Coleman's favor.


## VII.  Damages

The parties completed additional briefing on the issue of Eleventh Amendment immunity from damages.  The Eleventh Amendment does not shield Stanette Amy and Reginald Coleman from damages liability.  Hanas sued them in their personal capacities, and they could therefore raise the defenses of absolute and qualified immunity.  However, the Eleventh Amendment only protects a state official from liability when sued in his or her official capacity.  *Alkire v. Irving*, 330 F.3d 802, 811 (6th Cir. 2003); *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' [for damages] on state officials under § 1983.").  Therefore, a civil rights defendant may be a state official under qualified immunity analysis without receiving the protection of the Eleventh Amendment.

VIII.  Next steps

Hanas still has an extant equal protection claim and a § 1985(3) conspiracy to violate equal protection claim against Rottiers and Inner City Christian Outreach.

Three factual issues remain to define the scope of Amy's liability for the harms Hanas suffered.  The first issue concerns when Amy was reasonably on notice of the constitutional violations.  The second issue deals with when Judge Ransom had sufficient notice of the constitutional violations.  Amy is liable, at the least, between these two junctures.  The third issue is how Judge Ransom would have relied upon an investigation and report of constitutional violations that Amy should have made.  If, after receiving notice of abuses at Inner City Christian Outreach, Judge Ransom kept Hanas at ICCO because he did not receive a report of violations from Amy, then Amy could be liable for Hanas's harms that were prolonged by Judge Ransom's decision to keep Hanas at Inner City Christian Outreach.

The court will set a status conference.


S/ARTHUR J. TARNOW
Arthur J. Tarnow
United States District Judge

Dated:  February 29, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 29, 2008, by electronic and/or ordinary mail.

S/V.  Sims for THERESA E. TAYLOR
Case Manager
United States District Judge